1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   ADVANCED MULTILEVEL CONCEPTS,    ) Case Nos. 11-6679-SC
    INC. and ABLE DIRECT MARKETING,  )
8                                     ) ORDER GRANTING MOTION TO
        Plaintiffs,                   ) DISMISS, DENYING MOTION TO
9                                     ) STRIKE, DENYING MOTION FOR
            v.                        ) SANCTIONS, AND DENYING
10                                    ) MOTION FOR PARTIAL JUDGMENT
    STALT, INC., HILLARD M.           ) ON THE PLEADINGS
11  STERLING, ESQ., FREEBORN &        )
    PETERS LLP, and DOES 1 through    )
12  30, inclusive,                    )
                                      )
13                                    )
        Defendants.                   )
14                                    )
                                      )
15  _____)

16

17  **I.**   **INTRODUCTION**

18       This case arises out of allegedly unlawful "stop orders"

19  imposed upon shares of VitaminSpice held by Plaintiffs Advanced

20  Multilevel Concepts ("Advanced") and Able Direct Marketing ("Able")

21  (collectively, "Plaintiffs").  ECF No. 1 ("Compl.").  Plaintiffs

22  bring this action against Stalt, Inc. ("Stalt"), the Transfer Agent

23  that allegedly imposed the stop orders; Hillard M. Sterling

24  ("Sterling"), the attorney who allegedly counseled VitaminSpice to

25  issue the stop orders; and Freeborn & Peters LLP ("Freeborn &

26  Peters"), an Illinois law firm at which Sterling was a partner

27  during the relevant period (collectively, "Defendants").  Stalt has

28  filed an Answer denying most of the allegations in Plaintiffs'

United States District Court
For the Northern District of California

Complaint.  ECF No. 4 ("Answer").

Now before the Court are four motions.  Sterling and Freeborn & Peters (the "Freeborn Defendants") move to dismiss and strike the Complaint and also move for Rule 11 Sanctions.  ECF Nos. 27 ("MTD"), 29 ("MTS") 50 ("Rule 11 Mot.").[1]  Plaintiffs move for judgment on the pleadings against Stalt based on its Answer.  ECF No. 34 ("MJP").[2]  The Court finds these matters appropriate for disposition without oral argument.  For the reasons set forth below, the Court GRANTS the Freeborn Defendants' motion to dismiss, and DENIES their motion to strike as moot.  The Court also DENIES the Freeborn Defendants' motion for sanctions and Plaintiffs' motion for partial judgment on the pleadings.

**II.   BACKGROUND**

This case concerns stop orders placed on Plaintiffs' shares of VitaminSpice.  Plaintiffs are Wyoming corporations.  Compl. ¶¶ 1-2. VitaminSpice is also a Wyoming corporation and has its principal place of business in Wayne, Pennsylvania.  Compl. ¶ 6.  The alleged wrongdoing begins with VitaminSpice's Chief Executive Officer ("CEO"), Edward Bukstel ("Bukstel"), who allegedly abused alcohol at work and mismanaged the company's accounting function.  Id. ¶¶ 32-34.  Bukstel's alleged improprieties were reported to VitaminSpice's board of directors by Jehu Hand ("Hand"), the company's bookkeeper and securities counsel.  Id. ¶ 37.  Bukstel

---

[1] The Freeborn Defendants' motions to dismiss and strike are fully briefed.  ECF Nos. 43 ("MTD Opp'n"), 46 ("MTD Reply"), 41 ("MTS Opp'n"), 47 ("MTS Reply").  Plaintiffs have yet to file an opposition to the motion for sanctions.

[2] Plaintiffs' motion for judgment on the pleadings is fully briefed.  ECF Nos. 38 ("MJP Opp'n"), 40 ("MJP Reply").

United States District Court
For the Northern District of California

allegedly retaliated in early July 2010 by terminating Hand and by ordering VitaminSpice's transfer agent, Stalt, to impose a stop order on the shares of Able, who had hired Hand as corporate counsel.  Id. ¶¶ 38-39.

Stalt allegedly sent a letter to Able on July 12, 2010, stating that it had placed a stop order on Able's VitaminSpice shares "at the request of Vitamin Spice."  Compl. Ex. A ("July 12 Ltr.").  The July 12 letter further states:

> Stalt, Inc. is treating this as an adverse claim.  If [Able's common stock] certificate is properly presented for transfer[,] VitaminSpice will have 30 days to get a court order or bond in place.  If Stalt, Inc. does not have written evidence of one of these within 30 days we will remove the Stop Order and effect the transfer of the above mentioned certificate as presented if the transfer request has not been withdrawn.

Id.  In its Answer, Stalt states that the July 12 letter "speaks for itself" and that Stalt lacks "knowledge or information sufficient as to form a belief as to the truth or falsity of the allegations" concerning the issuance of the stop order.  Answer ¶ 39.

Around August 24, 2010, Bukstel had second thoughts about the stop order on Able's shares.  Id. ¶ 44.  Soon thereafter, the Freeborn Defendants allegedly took actions to ensure that the stop order would remain in place.  Sterling is admitted to the practice of law in Illinois and was a partner at Freeborn & Peters at the time the alleged misconduct occurred.  Id. ¶ 13.  Freeborn & Peters is a law firm with a principal place of business located in Chicago, Illinois.  Id. at 3.  Sterling allegedly advised VitaminSpice's board of directors to leave the Able stop order in place and expand its scope to include Advanced's shares of

3

**United States District Court**
For the Northern District of California

1    VitaminSpice.[3]   Id. ¶¶ 44-45.

2         Plaintiffs allege that Sterling also telephoned Stalt's CEO,

3    Bill Senner ("Senner"), in California on October 5, 2010 and made

4    "a series of slanderous allegations regarding fraud or other

5    malfeasance purportedly surrounding Plaintiffs and the validity of

6    their ownership claim over the Shares." Id. ¶ 52. Later that day,

7    Senner sent an email to Bukstel stating: "I just spoke with Hillard

8    Sterling. Although I didn't say much, he had some interesting

9    information to say the least."[4] Compl. Ex. D.

10        On October 6, 2010, the VitaminSpice board of directors passed

11   a resolution placing a stop order on Advanced's shares.  Id. ¶ 55.

12   The resolution stated: "[T]he Directors of the Corporation have

13   been notified by Hillard Sterling, an attorney engaged in

14   litigation against Jehu Hand . . . of potential irregularities with

15   Shareholders represented by Jehu Hand." Id.

16        The next day, October 7, Stalt sent a letter to Advanced

17   informing it that a stop order had been placed on Advanced's

18   VitaminSpice shares at the request of VitaminSpice.  Compl. ¶ 57,

19   Ex. C ("Oct. 7 Ltr.").  The October 7 letter is, in all relevant

---

20

21   [3] The Freeborn Defendants' alleged motivations for harming
     Plaintiffs are convoluted, though the Court reserves judgment on
22   their plausibility.  Plaintiffs allege that the lawyers were
     advancing the interests of one of their other clients, Keith A.
23   Mazer ("Mazer"), who was engaged in litigation with Hand over a
     residential property in Antigua worth over one million dollars.
24   Id. ¶ 17.  Hand and Mazer are also allegedly embroiled in three
     other federal court proceedings.  Plaintiffs allege that
25   "Sterling presumed that the damage [to Plaintiffs] would accrue to
     Hand by consequence . . . [;] it was his hope that  . . . Mazer
26   would thereby gain an advantage by way of an injured adversary with
     diminished resources to continue the litigation in which Mazer and
27   Hand were . . . vigorously engaged." Id. ¶ 48.

28   [4] Plaintiffs allege that Sterling called Senner on October 6, 2010,
     Compl. ¶ 51, but the email attached to the Complaint indicates that
     the conversation took place on October 5, Compl. Ex. D.

United States District Court
For the Northern District of California

1  respects, identical to the letter Stalt sent to Able on July 12.

2  Compare July 12 Ltr. with Oct. 7 Ltr. In its Answer, Stalt

3  "admits" Plaintiffs allegations regarding the October 7 letter.

4  Answer ¶ 57.

5      Plaintiffs allege that they lost over $2 million as a result

6  of the stop orders because VitaminSpice's share price dropped

7  precipitously while the stop orders were in place. Compl. ¶ 75.

8  Plaintiffs explain that no broker will accept "stopped shares" for

9  deposit because the marketability of those shares has been called

10  into question. Id. ¶ 60. Thus, according to Plaintiffs, "a 30-day

11  stop order amounts to a permanent block of sale." Id. Plaintiffs

12  allege that, sometime after November 2010, Stalt temporarily

13  refrained from reissuing the 30-day stop order "at every single

14  step in the chain leading to sale." Id. ¶ 64. Pursuant to these

15  concessions, Plaintiffs were able sell their shares and mitigate

16  some of their damages. Id. ¶ 65.

17      On November 9, 2010, Plaintiffs filed an action against

18  VitaminSpice, Bukstel, Stalt, and a number of other defendants in

19  Orange County Superior Court. ECF No. 31 ("Defs.' RJN") Ex. A.

20  The Superior Court dismissed the action without prejudice on venue

21  and jurisdiction grounds. Compl. at 11, n.4. On June 8, 2011,

22  Plaintiffs filed another suit against Bukstel and VitaminSpice in

23  the United States District Court for the Eastern District of

24  Pennsylvania (the "Pennsylvania Action"); Stalt and the Freeborn

25  Defendants are not named in the action. Defs.' RJN Ex. B. The

26  Pennsylvania Action was later transferred to bankruptcy court and

27  was stayed when Hand filed an involuntary bankruptcy petition

28  against VitaminSpice on August 5, 2011. Defs.' RJN Ex. C.

1    Plaintiffs filed the instant action on December 28, 2011

2    against Stalt and the Freeborn Defendants.  They assert two causes

3    of action against Stalt: (1) breach of California Commercial Code

4    ("the Commercial Code") §§ 8401, 8403(b) <u>et</u> <u>seq.</u>;[5] and (2)

5    conversion.  Plaintiffs' last three causes of action are directed

6    against the Freeborn Defendants: (3) intentional interference with

7    prospective economic advantage; (4) legal malpractice; and (5)

8    libel.  Plaintiffs pray for damages flowing from Defendants'

9    alleged misconduct, as well as punitive and exemplary damages.

10

11   **III. <u>DISCUSSION</u>**

12       **A.   <u>The Freeborn Defendants' Motion to Dismiss</u>**

13       The Freeborn Defendants argue that Plaintiffs' claims against

14   them should be dismissed under Federal Rule of Civil Procedure

15   12(b)(2) because the court lacks personal jurisdiction.  MTD at 8.

16   The argument is predicated on the fact that Sterling is admitted to

17   practice law in Illinois and Freeborn & Peters' principal place of

18   business is located in Chicago, Illinois.  Compl. ¶¶ 13-14.

19   Plaintiffs respond that the exercise of general jurisdiction is

20   appropriate in light of the Freeborn Defendants' contacts with

21   California, or, alternatively, specific jurisdiction is appropriate

22   because Plaintiffs' claims arise out of Sterling's phone call to

23   Stalt in California.  MTD Opp'n at 5-7.  The Court finds

24   Plaintiffs' arguments unavailing and concludes that it lacks

25   jurisdiction to hear their claims against the Freeborn Defendants.

26

27   [5] Plaintiffs' first cause of action is styled as "Breach of Uniform
     Commercial Code" ("UCC").  Compl. at 14.  California has adopted

28   the UCC as part of the California Commercial Code.  For the sake of
     clarity, the Court refers to the codified California code sections
     rather than the UCC.

**United States District Court**
For the Northern District of California

6

1.   <u>General Jurisdiction</u>

General jurisdiction exists where the defendant engages in "continuous and systematic general business contacts that approximate physical presence in the forum state.  This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotations and citations omitted).

Plaintiffs argue that general jurisdiction is appropriate because Sterling has successfully applied to appear pro hac vice before the United States District Court for the Central District of California in three separate cases since October 2009.  MTD Opp'n at 5-6 (citing ECF No. 44 ("Pls.' RJN") Ex. A).  Plaintiffs represent that these pro hac vice appearances include approximately six visits to California for the purposes of mediation, conducting depositions, and other trial machinations.  <u>Id.</u> at 6.  This argument lacks merit.  Pro hac vice status is inherently temporary, and six visits to California hardly approximates a physical presence in the state.  Further, it appears that many of Sterling's pro hac vice appearances occurred after he left Freeborn & Peters and, therefore, have no bearing on Freeborn & Peters' contacts with California.  <u>See Calder v. Jones</u>, 465 U.S. 783, 790 (1984) ("[E]ach defendant's contacts with the forum State must be assessed individually.").

Plaintiffs further argue that California Rule of Court 9.40(f) requires that the Court exercise personal jurisdiction.  MTD Opp'n at 7.  Rule 9.40(f) provides, in relevant part:

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

> A person permitted to appear as counsel pro hac vice . . . . is subject to the jurisdiction of the courts of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of California. The counsel pro hac vice must familiarize himself or herself and comply with the standards of professional conduct required of members of the State Bar of California and will be subject to the disciplinary jurisdiction of the State Bar with respect to any of his or her acts occurring in the course of such appearance.

Cal. Rule of Ct. 9.40(f). In other words, under Rule 9.40, an out-of-state attorney is subject to jurisdiction in California for charges of professional misconduct arising out of his or her pro hac vice appearance in the state. Contrary to Plaintiffs' assertions, the rule does not provide that a pro hac vice appearance subjects an attorney to jurisdiction in California for claims unrelated to that appearance. Since Plaintiffs' claims are not connected to Sterling's pro hac vice appearances in California, these appearances cannot support the exercise of jurisdiction here.

Plaintiffs also argue that Sterling has the requisite minimum contacts with California since he left Freeborn & Peters to join Lewis Brisbois Bisgaard & Smith ("Lewis Brisbois"), a multi-state law firm with offices in San Francisco, San Diego, San Bernadino, Costa Mesa, and Los Angeles. MTD Opp'n at 6. Plaintiffs point out that Sterling has recently filed documents with the Central District of California and that these documents provide the Costa Mesa address of Lewis Brisbois as Sterling's business address. Id. (citing Pls.' RJN Exs. C, D).

These facts are unpersuasive as they fail to show that Sterling has "continuous and systematic" contacts with the forum. Missing from Plaintiff's evidence is any indication that Sterling regularly works out of Lewis Brisbois's offices in California, as

opposed to its offices in other states.  Sterling's filings with the Central District of California do not support Plaintiffs' position.  Indeed, they tend to undermine it.  The signature line on one of these filings lists Sterling's address as Chicago, Illinois.  Pls.' RJN Ex. C at 5.  Attached to the other filing is a proof of service executed in Chicago.  Pls.' RJN Ex. D at 8.  Both documents indicate that Sterling was appearing pro hac vice and was working with other Lewis Brisbois attorneys who are admitted to practice law in California.  See Pls.' RJN Exs. C, D.  It is logical to assume that the Costa Mesa address listed in these documents belongs to Lewis Brisbois's California attorneys, not to Sterling.  Taken together, these facts tend to support jurisdiction in Illinois, not California.

For these reasons, the Court concludes that the Freeborn Defendants lack the minimum contacts with California necessary to support the exercise of general jurisdiction.

> ### 2.   Specific Jurisdiction

The Ninth Circuit has enunciated a three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802.  The first prong is often referred to as "the purposeful availment prong."  "If the plaintiff succeeds

**United States District Court**
For the Northern District of California

1    in satisfying both of the first two prongs, the burden then shifts

2    to the defendant to 'present a compelling case' that the exercise

3    of jurisdiction would not be reasonable."  Id.

4         "[A] foreign act that is both aimed at and has effect in the

5    forum state satisfies the purposeful availment prong of the

6    specific jurisdiction analysis." Bancroft & Masters, Inc. v.

7    Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).  For

8    example, in Calder, a California plaintiff sued a national magazine

9    and other defendants for an allegedly defamatory article that had

10   been written and edited in Florida.  465 U.S. at 785.  The Supreme

11   Court upheld the exercise of personal jurisdiction in California,

12   even though the defendants had few contacts with the state.  Id. at

13   789-90.  The court reasoned that the defendants' actions "were

14   expressly aimed at California" and "[the defendants] knew that the

15   brunt of th[e] injury would be felt by [the plaintiff] in the

16   State."  Id.

17        The Ninth Circuit construes Calder to impose three

18   requirements: "the defendant allegedly [must] have (1) committed an

19   intentional act, (2) expressly aimed at the forum state, (3)

20   causing harm that the defendant knows is likely to be suffered in

21   the forum state."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et

22   L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting

23   Schwarzenegger, 374 F.3d at 803).  As to the third requirement,

24   "the 'brunt' of the harm need not be suffered in the forum state."

25   Id. at 1207.  "If a jurisdictionally sufficient amount of harm is

26   suffered in the forum state, it does not matter that even more harm

27   might have been suffered in another state."  Id.

28        Here, Plaintiffs' argument for the exercise of specific

**United States District Court**
For the Northern District of California

1  jurisdiction is predicated on Sterling's October 5 telephone call
2  with Senner, Stalt's CEO, who was located in California at the
3  time.  MTD Opp'n at 7-8.  Plaintiffs insist that it is plausible
4  that: (1) Sterling initiated the call, (2) Sterling advised Stalt
5  regarding potential irregularities in Plaintiffs' VitaminSpice
6  shares, and (3) this call was the proximate cause of the stop order
7  issued by Stalt the following day.  Id. at 8.

8      Even if the Court were to draw these inferences, the exercise
9  of specific jurisdiction would be inappropriate since there is no
10  indication that Plaintiffs suffered any harm in California or that
11  Sterling's actions were aimed at California.  Plaintiffs are
12  Wyoming corporations with no apparent connections to California.
13  Compl. ¶¶ 1-2.  Accordingly, Sterling's telephone call with Senner
14  and the stop orders that allegedly resulted from that call could
15  not have injured Plaintiffs in California.

16      The Ninth Circuit's decision in Metropolitan Life Insurance
17  Co. v. Neaves, 912 F.3d 1062 (9th Cir. 1990), is instructive.  The
18  defendant, an Alabama resident, mailed fraudulent information to an
19  insurer in order to claim life insurance policy benefits to which
20  she was not entitled, ultimately reducing the share of benefits
21  distributed to another beneficiary who resided in California.  912
22  F.3d at 1063.  The defendant argued California courts lacked
23  jurisdiction, urging the Ninth Circuit "to focus only on her
24  conduct in mailing the fraudulent information, contending that it
25  was 'only fortuitous' that the mailing was directed to California
26  as opposed to, for example, [the insurer's] headquarters in New
27  York."  Id. at 1065.  The Court found that it was irrelevant where
28  the letter was sent; the critical inquiry was where the impact of

1   the fraud took place.  <u>Id.</u>  Likewise, here, Plaintiffs focus on

2   where Sterling's phone call was directed but do not address where

3   the harm was sustained.

4        For the reasons set forth above, the Court declines to

5   exercise specific or general jurisdiction over the Freeborn

6   Defendants.  Accordingly, the Court DISMISSES WITHOUT PREJUDICE

7   Plaintiffs' claims against the Freeborn Defendants.  As the Court

8   lacks jurisdiction to address the merits of Plaintiffs' claims, it

9   DENIES the Freeborn Defendants' motion to strike.

10       **B.    The Freeborn Defendants' Motion for Rule 11 Sanctions**

11       Plaintiffs have yet to file an opposition to the Freeborn

12   Defendants' motion for Rule 11 sanctions.  Nevertheless, having

13   reviewed the moving papers, the Court can discern no convincing

14   reason to grant the motion.

15       Since the Court lacks subject matter jurisdiction, it is

16   hesitant to rule on the merits of Plaintiffs' claims against the

17   Freeborn Defendants, let alone find that those claims are

18   frivolous.  Further, the motion lacks merit.  The Freeborn

19   Defendants essentially argue that Plaintiffs' claims must be

20   frivolous because they fail as a matter of law.  But that is not

21   how Rule 11 works.  "The key question in assessing frivolousness is

22   whether a complaint states an arguable claim -- not whether the

23   pleader is correct in his perception of the law."  <u>Hudson v. Moore</u>

24   <u>Bus. Forms, Inc.</u>, 836 F.2d 1156, 1159 (9th Cir. 1987).  The Court

25   concludes that the Complaint, at the very least, states an arguable

26   claim.

27       The Freeborn Defendants also argue that Plaintiffs' claims

28   were filed for an improper purpose.  Specifically, they state that:

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

> [T]he history between Plaintiffs' corporate attorney, Jehu Hand, and the Freeborn Defendants suggests that Plaintiffs have filed their Complaint in this action in an effort to drive a wedge between attorney Sterling and Mr. Mazer and in retaliation for the Freeborn defendants' zealous representation [of] Mr. Mazer in three unrelated actions involving Mr. Hand . . . . Additionally, the history between VitaminSpice, Plaintiffs[,] and Mr. Hand suggest that this Complaint was filed in an attempt to drive a wedge between Mr. Sterling and VitaminSpice . . . .

Sanctions Mot. at 15-16.  Plaintiffs have leveled similar allegations against the Freeborn Defendants, claiming that they counseled VitaminSpice to impose the stop orders so that Mazer could gain an advantage over Hand in the separately filed actions. Compl. ¶ 17.  The Court suspects that Plaintiffs would assert that this sanctions motion was filed for that same improper purpose. The Court declines to involve itself in such feuds.  It also declines to conclude that Plaintiffs filed this action for an improper purpose.  The Freeborn Defendants would have the Court conclude that Plaintiffs sued them to harm or settle a score with Mazer.  A more plausible inference is that Plaintiffs filed this action to recover for damages they suffered as a result of the Freeborn Defendants' allegedly illicit conduct -- a perfectly proper purpose.

For these reasons, the Court DENIES the Freeborn Defendants' motion for sanctions.

### C.   **Plaintiffs' Motion for Judgment on the Pleadings**

Plaintiffs move for partial judgment on the pleadings against Stalt as to its liability on Plaintiffs' first cause of action for breach of Division 8 of the Commercial Code.[6]  The crux of Plaintiffs' motion is that Division 8 provides that only the

---

[6] Plaintiffs also pray for a hearing to determine the amount of damages.  MJP at 5.

registered owner of a stock certificate may lawfully instruct a transfer agent to impose a stop order.  MJP at 7.  Accordingly, Plaintiffs argue that VitaminSpice lacked legal authority to instruct Stalt to issue the stop order on Plaintiffs' shares.  <u>Id.</u> Plaintiffs further argue that Stalt, as a transfer agent, may be held liable for damages arising from the unauthorized stop orders under Section 8407 of the Commercial Code.  <u>Id.</u>

The legal standard for evaluating a motion for judgment on the pleadings is well-settled.  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  <u>Hal Roach Studios, Inc. v. Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989).  "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party."  <u>Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).  Thus, "a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."  <u>Id.</u>  However, the Court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

In the instant action, it appears that Plaintiffs may have a strong case against Stalt on summary judgment, especially since many of the arguments Stalt raises in its opposition brief appear

United States District Court
For the Northern District of California

1    to lack merit.[7]  However, at this stage, entering judgment in favor

2    of Plaintiffs would be premature.  Plaintiffs ask the Court to

3    infer too much from the pleadings, especially since the Court must

4    construe the allegations in the light most favorable to the non-

5    moving party.

6         Plaintiffs rely heavily on the July 12 Letter and the October

7    7 Letter, both of which were attached to the Complaint.  In these

8    letters, Stalt informed Plaintiffs that it had placed a Stop Order

9    on certain VitaminSpice Shares at the request of VitmainSpice.

10   Stalt has not denied the authenticity or content of these letters.[8]

11   However, there are only so many inferences the Court may draw from

12   the documents, especially where those inferences would favor the

13   moving party.  For example, Plaintiffs argue that VitaminSpice

14   lacked the authority to impose a stop order on their stock

15   certificates as "the Certificates in question are not titled in its

16   name, nor has ownership of the Certificates ever been assigned to

17   [VitaminSpice] via special indorsement."  MJP at 10.  The Court may

18   not jump to such conclusions since these facts are not apparent

19   from the July 12 Letter or the October 7 Letter.  Nor are these

20   facts admitted in Stalt's Answer.  The Complaint describes

21   Plaintiffs' VitaminSpice stock certificates.  Compl. ¶¶ 1-2.  In

22   response, Stalt states that it "lacks knowledge or information

23   sufficient as to form a belief as to the truth or falsity of the

24   allegations . . . and, therefore denies them."  Answer ¶¶ 1-2.

_____

25

26   [7] The Court notes that Stalt's interpretation of the Commerical
     Code, as enunciated in its opposition papers, is unpersuasive.

27   [8] In its Answer, Stalt states that the July 12 Letter "speaks for
     itself" and "admits the allegations of paragraph 57 [of the
28   Complaint]," which references the October 7 Letter.  Answer ¶¶ 39,
     57.

**United States District Court**
For the Northern District of California

1   The Court also notes that Plaintiffs do not address any of the

2   six affirmative defenses alleged in Stalt's Answer.  The Court

3   concedes that these affirmative defenses are not particularly well-

4   pled -- indeed, many do not appear to be affirmative defenses at

5   all.  Nevertheless, "if the defendant raises an affirmative defense

6   in his answer it will usually bar judgment on the pleadings,"

7   Seventh-Day Adventists, 887 F.2d at 230, and Plaintiffs have failed

8   to explain why Stalt's affirmative defenses are defective.  The

9   Court declines to do the work for Plaintiffs, especially on a

10  dispositive motion that could deprive Stalt of a future opportunity

11  to plead its case.[9]

12  Accordingly, the Court DENIES Plaintiffs' motion for partial

13  judgment on the pleadings.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  [9] Curiously, Plaintiffs' moving papers devote significant space to defenses which Stalt might have -- but did not -- raise.  MJP at 9-

28  16.  Equally curious, Stalt fails to address any of its asserted affirmative defenses in its opposition papers.

**United States District Court**
For the Northern District of California

**IV.   CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants Hillard M. Sterling, Esq., and Freeborn & Peters LLP's motion to dismiss and DISMISSES Plaintiffs Advanced Multilevel Concepts, Inc., and Able Direct Marketing's claims against these defendants WITHOUT PREJUDICE.  The Freeborn Defendants' motion to strike and motion for sanctions are DENIED.  Further, the Court DENIES Plaintiffs' motion for partial judgment on the pleadings against Defendant Stalt, Inc.  The Court hereby sets a status conference for July 6, 2012 at 10:00 a.m. in Courtroom 1, 450 Golden Gate Avenue, San Francisco, California.

IT IS SO ORDERED.

Dated: May 21, 2012

UNITED STATES DISTRICT JUDGE